JOHN B. EDWARDS, Trustee, etc., Defendant in Error, *vs.* GUSTAV A. SCHILLINGER *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1910—Rehearing denied June 8, 1910.*

1. CORPORATIONS—*a business corporation is constructively present where it has property or agents.* A business corporation is constructively present outside of the State of its creation wherever it has property and carries on its operations by means of agents.

2. SAME—*foreign corporation doing business in Illinois through agents may be sued here.* A foreign corporation doing business and having agents in Illinois may be sued here and service be had through its officers or agents, but if it is not doing business in Illinois and has no office or agent here, the courts of Illinois can not obtain jurisdiction by service upon an officer or agent accidentally within the State or passing through it.

3. SAME—*local courts may not have jurisdiction of the subject matter of suit.* Courts of one State have no power to dissolve a corporation organized in another State and wind up its affairs, but assets which are a trust fund for shareholders and creditors will be administered by domestic courts where the assets are found, as it is the duty of courts to keep local assets for the satisfaction, in the first instance, of local claims.

4. SAME—*a local court will not take jurisdiction if it cannot make any effective decree.* A local court will not take jurisdiction of a suit concerning a foreign corporation where it cannot make any effective decree, as in case of enjoining or compelling an act in the foreign State, where the decree can only be enforced by proceedings for contempt and the parties are beyond jurisdiction.

5. SAME—*courts cannot exercise visitorial powers over foreign corporation.* Courts of one State cannot exercise visitorial powers over corporations of other States, such as requiring them to pay such dividends as on an accounting of the affairs of the corporation may appear to be proper, nor to determine whether a stockholder has been wrongfully excluded from privileges, and other matters of that nature.

6. SAME—*when domestic courts may exercise jurisdiction.* If a domestic court has jurisdiction of the parties and of the subject matter of a suit concerning a foreign corporation and has power to grant a remedy which will be effective, it may, in the exercise of sound judicial discretion, take jurisdiction, but it will not afford remedies denied to the parties in the foreign State and which would operate with hardship on citizens of the domestic State.

7. SAME—*enforcement of foreign laws under doctrine of comity.* How far foreign laws should be enforced under the doctrine of comity depends upon whether any wrong or injury will be done to citizens of the domestic State, whether the policies of its laws will be contravened or impaired, or whether the courts can do complete justice to those affected by the decree.

8. SAME—*promise to pay unpaid balance on stock need not be made to corporation.* The liability of a transferee of stock to pay the unpaid balance due thereon to the corporation exists whether his promise is made directly to the corporation or to the assignor of the stock for the benefit of the corporation.

9. SAME—*a creditor may proceed in equity without any call by corporation.* A creditor of an insolvent corporation may proceed in equity against stockholders without any call being made by the corporation or the bankruptcy court.

10. SAME—*creditor need not attempt to settle affairs of corporation to obtain his due.* A creditor of a corporation need look no further than to find a solvent stockholder who is liable for his claim, and he is not required to settle the affairs of the corporation to obtain his due, nor to make all stockholders defendants or adjust equities between them or the corporation and others.

11. SAME—*when contract of a corporation limiting liability of its stockholders is void.* A contract of a corporation limiting the liability of its stockholders to a portion of the par value of their stock is void both as to creditors and the trustee in bankruptcy, and the relation to the corporation of a stockholder who has not paid for his stock is the ordinary relation of debtor.

12. SAME—*term "internal affairs" must be confined to relations affecting only stockholders and corporation.* The term "internal affairs," as used with reference to the doctrine that local courts will not take jurisdiction of a suit relating to the internal affairs of a foreign corporation, must be limited to relations affecting only the stockholders and the corporation among themselves.

13. SAME—*when an Illinois court has jurisdiction.* An Illinois court has jurisdiction of a suit in equity by the trustee in bankruptcy of a foreign corporation in behalf of its creditors, against resident stockholders, to set aside a fraudulent dividend, declared when the corporation was insolvent and applied by the stockholders in payment of the unpaid balance due upon their stock, and to compel payment of the unpaid balance due, where the only stockholders in the foreign State are insolvent and the bill alleges both a liability under the laws of the foreign State and an express promise to pay. (*Young* v. *Farwell,* 139 Ill. 326, and *Tuttle* v. *Bank of the Republic,* 161 id. 497, explained.)

14. PARTIES—*trustee in bankruptcy represents the corporation and the creditors.* A trustee in bankruptcy for an insolvent corporation represents both the corporation and its creditors, and the corporation is, in legal contemplation, a party to such trustee's suit against stockholders to recover unpaid balances on their stock.

15. PLEADING—*laws of foreign States are pleaded and proved as facts.* The laws of other States are pleaded in the courts of this State as facts, which may be admitted or denied and may be proven the same as any other fact, and there is no reason for sending an applicant for redress of wrong to another State to have a fact determined which may be pleaded and proved in our courts.

FARMER, C. J., and VICKERS and COOKE, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

McCASKILL & SON, for plaintiffs in error:

The dividend declared by the Missouri corporation must be set aside before the different stockholders can be held liable for their unpaid subscriptions. *Scovill* v. *Thayer*, 105 U. S. 143; *Felker* v. *Sullivan*, 34 Colo. 212; *Dickerman* v. *Trust Co.* 176 U. S. 184; *Reichwald* v. *Hotel Co.* 106 Ill. 439.

Stockholders of a bankrupt corporation are liable for unpaid subscriptions only upon call made by a court of competent jurisdiction. *Scovill* v. *Thayer*, 105 U. S. 143; *Felker* v. *Sullivan*, 34 Colo. 212; *Banet* v. *Railroad Co.* 13 Ill. 504; *Insurance Co.* v. *Moore*, 84 id. 575; *Telegraph Co.* v. *Gray*, 122 id. 630; *Hawkins* v. *Glenn*, 131 U. S. 333; *Glenn* v. *Marbury*, 145 id. 499; *Simmons* v. *Taylor*, 106 Tenn. 730; *Spangler* v. *Railway Co.* 21 Ill. 275.

The equity courts of Illinois have no visitorial power over foreign corporations and cannot regulate or interfere with their internal powers and management. 3 Clark & Marshall on Private Corp. sec. 864; *Mining Co.* v. *Field*, 64 Md. 151; *Sidway* v. *Live Stock Co.* 101 Fed. Rep. 481;.

*Howell* v. *Railroad Co.* 51 Barb. 378; *Young* v. *Farwell,* 139 Ill. 326; *Patterson* v. *Lynde,* 112 id. 196; *Fowler* v. *Lamson,* 146 id. 472.

The fact that the stockholders outside of Illinois are alleged to be insolvent does not confer jurisdiction upon our State courts. *Young* v. *Farwell,* 139 Ill. 326.

The corporation law of the State of the corporation's existence is a part of a stockholder's contract of subscription. 1 Thompson on Corp. sec. 1137; *Rensselaer & Coe* v. *Barton,* 16 N. Y. 457; *Small* v. *Herkimer Manf. Co.* 2 N. Y. 330; *Hoagland* v. *Railroad Co.* 18 Ind. 452; Cook on Corp. (4th ed.) sec. 233; Brandenburg on Bankruptcy, (3d ed.) 787.

HOYNE, O'CONNOR, HOYNE & IRWIN, (HARRY D. IRWIN, and CARL J. APPELL, of counsel,) for defendant in error:

Neither the United States District Court in St. Louis nor any other court in Missouri could set aside a fraudulent declaration of dividends or enforce an assessment on unpaid stock without personal service upon the stockholders, and hence it was necessary to bring suit in Illinois, where the stockholders live. *Peck* v. *Coal Co.* 11 Ill. 88; *Ward* v. *Farwell,* 97 id. 593; *In re Knickerbocker,* 121 Fed. Rep. 1004; *In re Rochford,* 124 id. 182; *Hull* v. *Burr,* 153 id. 183; *Felker* v. *Sullivan,* 34 Colo. 212; *Wall* v. *Cox,* 181 U. S. 244; *Bardes* v. *Bank,* 178 id. 524.

A suit to enforce a common law liability,—and, generally, a statutory liability also,—may be brought wherever jurisdiction can be obtained of the necessary parties. *Mandel* v. *Land Co.* 154 Ill. 187; *Patterson* v. *Lynde,* 112 id. 196; *Bell* v. *Farwell,* 176 id. 489; *Whitman* v. *Bank,* 176 U. S. 559.

A suit to collect the assets of a bankrupt estate may be brought in any court of general jurisdiction and need not be brought in the bankruptcy court. Bankruptcy act of

1898, sec. 23*b; Bardes* v. *Bank,* 178 U. S. 524; *Skewis* v. *Barthell,* 152 Fed. Rep. 534; *Ward* v. *Jenkins,* 10 Metc. 583; *Stevens* v. *Bank,* 101 Mass. 109; Collier on Bankruptcy, (7th ed.) 292.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, John B. Edwards, trustee in bankruptcy of Schillinger Bros. Asphalt Company, a corporation, filed his bill in the superior court of Cook county against the plaintiffs in error, Gustav A. Schillinger and A. C. Gumbinger, stockholders of the corporation, to set aside a dividend declared by the directors in fraud of creditors and applied by the stockholders in payment of unpaid balances of their subscriptions to the capital stock, and to compel plaintiffs in error to pay the amount of their subscriptions represented by the fraudulent dividend certificates. The defendants to the bill filed a general demurrer thereto, which was overruled by the court, and they were ruled to answer the bill within ten days. They failed to answer but elected to stand by their demurrer and were defaulted, and a decree was entered in accordance with the prayer of the bill, requiring the defendant Gustav A. Schillinger to pay to the complainant $3000 and the defendant A. C. Gumbinger to pay $2000, being the portions of their unpaid subscriptions which they had attempted to cancel by means of the fraud. The Appellate Court affirmed the decree on appeal, and a writ of error was sued out of this court to review the judgment of the Appellate Court.

The following are the material facts alleged in the bill and admitted by the demurrer: Schillinger Bros. Asphalt Company is a corporation organized on October 3, 1900, under the laws of the State of Missouri, with a capital stock of $20,000, divided into shares of $100 each. The original subscribers, with the amounts of their subscrip-

tions, were as follows: B. J. Calking one hundred shares, Charles Mueller, Jr., ninety-nine shares, and Henry Jacobson one share. Money or property turned over to the corporation was accepted as half payment and certificates were issued showing that the stock was only half paid for. The defendant Gustav A. Schillinger became the owner of sixty shares of the capital stock and received a certificate showing upon its face that it was but half paid, and he assumed and agreed to pay to the corporation the balance of the subscription price when demanded. The defendant A. C. Gumbinger became the owner of forty shares and received a certificate therefor showing on its face that said stock was but half paid, and he assumed and agreed to pay the corporation the balance of the subscription price when demanded. At a meeting of the board of directors held in the city of St. Louis, Missouri, on April 28, 1902, when the corporation was wholly insolvent and unable to pay any dividend whatever upon its stock, the directors, for the purpose of relieving the stockholders from liability for the unpaid portion of the stock held by them, pretended to declare a dividend of $8920.65, and authorized the secretary to issue dividend certificates to Schillinger upon sixty shares, to Charles Mueller, Jr., upon fifty shares, to A. C. Gumbinger upon forty shares, to Henry Jacobson upon one share and to A. Maritzan upon ten shares, and to receive said dividend certificates and the stock certificates held by each of said parties, and to issue to them, in lieu thereof, certificates of fully paid stock in the corporation. Dividend certificates were given to the above named stockholders, who were the only holders of stock in the corporation, and said certificates, with the half paid certificates, were exchanged for certificates of fully paid stock. On November 8, 1902, the corporation was adjudged a bankrupt by the district court of the United States in Missouri, and the complainant was elected trustee of the estate and qualified as such. The trustee reduced to cash all of the assets ex-

cept the liability of the stockholders and a claim that was in litigation, and has $725.95, proceeds of such assets. Claims to the amount of $7194.10 were proved and allowed, payable out of the assets. The bankrupt corporation ceased doing business, and all the stockholders but the defendants are residents of the State of Missouri and are insolvent, and a judgment against them, or either of them, would be uncollectible. By the laws of Missouri a transferee of stock is liable for any unpaid balance thereon.

The substantial ground upon which it is contended that the judgment of the Appellate Court was wrong is, that the superior court had no jurisdiction to set aside the fraudulent dividend or to order a call upon stockholders to pay unpaid subscriptions, because the dividend was declared by a corporation which was a resident of the State of Missouri, and the courts of that State, alone, had jurisdiction over it or its affairs. Counsel for plaintiffs in error regard the bankrupt corporation as a necessary party to the suit, and any interference with the action of its directors, by setting aside the fraud, as beyond the jurisdiction of the courts of this State. The arguments touching that subject have taken a very wide range, and cover nearly all questions relating to the powers of courts over foreign corporations or in any litigation where their affairs are in any manner involved.

The courts have never entertained any doubt of the right of a corporation to bring suits in other jurisdictions than that where it was created. When that question first arose in England, the argument that a foreign corporation was but an emanation of the foreign sovereignty, of which the laws of England would not take notice and the courts might not sufficiently understand the foreign laws, did not prevail, and it was held that such a corporation might sue in the English courts. (*Henriques* v. *Dutch West India Co.* 2 Ld. Raym. 1532; *Dutch West India Co.* v. *Henriques & Moses,* 1 Strange, 613.) The law in this State

on that subject was declared in the early case of *Bank of Washtenaw* v. *Montgomery,* 2 Scam. 422, where the court said: "It is supposed that nothing is better settled than that corporations may institute suits in the courts of other States and countries than those under whose laws they may have been established." The only rule consistent with that doctrine would be that a corporation permitted to enforce rights in this State should also be subject to have its liabilities enforced here, but as a matter of fact there was considerable conflict in the decisions in this country as to whether a foreign corporation could be sued outside of the State of its creation except upon a voluntary appearance, and perhaps more numerous decisions were that it could not. The view of many courts was that a corporation could not migrate beyond the boundaries of the State of its creation so as to be there served with process. *Peckham* v. *Haverhill North Parish,* 16 Pick. 274; *McQueen* v. *Middletown Manf. Co.* 16 Johns. 5; *Middlebrooks* v. *Springfield Ins. Co.* 14 Conn. 301.

The theory that a corporation can only have its existence in the State of its creation has long since been dispelled by the migratory corporations which have transacted the business of the country, and there have always been courts which held that they could be sued wherever they could be served with process in accordance with the local law. Quite convincing reasons that they could be so sued were given in *Libby* v. *Hogdon,* 9 N. H. 394, where the court said: "If we admit and vindicate their rights, evenhanded justice requires that we also enforce their liabilities and not send our citizens to a foreign jurisdiction in quest of redress for injuries committed here." The Supreme Court of the United States, in *Barrows Steamship Co.* v. *Kane,* 170 U. S. 100, commented on the manifest injustice resulting from permitting a foreign corporation to do business in a State and to bring suits in its courts but not permitting the corporation to be sued there. It was said that

such injustice had induced the passage of statutes in many States providing that a foreign corporation doing business within the State shall keep a place of business and appoint an agent residing therein upon whom process may be served; but it was held that a foreign corporation doing business in the State might be sued there without any such statute, and that the liability to be sued might be implied from the grant to do business in the State. In *Western Union Telegraph Co.* v. *Pleasants,* 46 Ala. 641, it was held that a foreign corporation doing business in a State through a managing agent or employee may be sued there by obtaining service on such agent or employee, and a statute providing for that method of service on corporations generally, was applied to a foreign corporation.

It is a just and reasonable theory that a business corporation is constructively present, outside of the State of its origin, wherever it has property and carries on its operations by means of agents. This court has maintained that doctrine from the beginning, and in *Mineral Point Railroad Co.* v. *Keep,* 22 Ill. 9, which was an action of debt, with an attachment in aid, against a Wisconsin corporation, it was held that service upon an agent in this State was sufficient to give jurisdiction. The court said that it would be neither just nor wise to bestow upon foreign corporations having property within this State and exercising powers and privileges here, immunity of exemption from observance of their contracts or to deny to the people the usual facilities for collecting their debts against them. It was held that service of process could be had upon agents of foreign corporations within the State in the same manner as on agents of local corporations. The same principle was stated in *Midland Pacific Railway Co.* v. *McDermid,* 91 Ill. 170, where it was said that a foreign corporation doing business and having agents in this State may be sued and service had through its agents or officers doing business here the same as domestic corporations. Again, in

*Italian-Swiss Agricultural Colony* v. *Pease,* 194 Ill. 98, it was held that where a foreign corporation voluntarily extends its business into this State, which it can only transact through an agent, it is presumed to do so with full knowledge that the statutes of the State authorize the courts to obtain jurisdiction of it by service of a copy of process on one of its agents. While a corporation is a resident of the State of its creation there is no ground of distinction between it and an individual, so far as a suit or jurisdiction of courts is concerned. Even under that rule entire equality cannot be secured, since a foreign mercantile corporation may bring suits in our courts to collect debts arising from the sale and delivery of goods though it has no general office in the State nor any agent upon whom process might be served, so that it cannot be sued here. *Spry Lumber Co.* v. *Chappell,* 184 Ill. 539.

It may be that a suit cannot be maintained against a foreign corporation because a court cannot obtain jurisdiction of the corporation. If a foreign corporation does no business in a State through agents or employees and has no office there, jurisdiction cannot be obtained by serving the president accidentally within the State or passing through it. (*Moulin* v. *Trenton Mutual Life and Fire Ins. Co.* 24 N. J. L. 22.) If a foreign corporation confines its operations to the State within which it was created and does not transact any business in another State and has no office or agent located there, jurisdiction cannot be obtained by serving process upon an officer or agent temporarily in the latter State. (*Midland Pacific Railway Co.* v. *McDermid, supra; Italian-Swiss Agricultural Colony* v. *Pease, supra.*) There are also cases where the court would have no jurisdiction of the subject matter, an illustration of which is the power to decree a forfeiture of the franchise of a foreign corporation. (*Society for Propagation of Gospel* v. *New Haven,* 8 Wheat. 464.) The courts of one State have no power to dissolve a foreign corporation and wind up its affairs

but it will retain its legal existence until dissolved by a proceeding in the State which created it; but even in that case, assets which are a trust fund for shareholders and creditors will be administered by the domestic courts where they are found. (*Life Association of America* v. *Fassett,* 102 Ill. 315.) It is the duty of a State to keep the local assets for the satisfaction, in the first instance, of local claims. (*Coombs* v. *Carne,* 236 Ill. 333; 18 Cyc. 1229.) Another class of cases is where the court cannot make any effective decree, as in a case of enjoining or compelling an act in a foreign State where the decree could only be enforced by proceedings for contempt and the parties are beyond the jurisdiction. Courts of one State cannot exercise visitorial powers over corporations of other States, such as requiring them to pay such dividends as on an accounting of the affairs of the corporation may appear to be proper, nor to determine whether a stockholder has been wrongfully excluded from his privileges, and matters of that kind.

If, however, a court has jurisdiction of the necessary parties and of the subject matter and has power to grant an effective remedy, there has never been any question about the existence of the jurisdiction but the question has been as to the propriety of assuming jurisdiction in the exercise of a sound judicial discretion. In the exercise of such discretion the courts will not permit their tribunals to be used for the purpose of affording remedies denied to the parties in the foreign State and which would operate with hardship on the citizens of the domestic State. (*Rice* v. *Merrimac Hosiery Co.* 56 N. H. 114.) How far foreign laws should be enforced under the doctrine of comity depends upon whether any wrong or injury will be done to citizens of the domestic State, whether the policies of its laws will be contravened or impaired, or whether the courts can do complete justice to those affected by the decree. (*New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349.) In the case of

245—16

*May* v. *Black,* 77 Wis. 101, it was considered that the foreign law was enforceable only in the foreign State and in a particular form of action, and for those reasons it was held that the Wisconsin court ought to decline to assume jurisdiction. It was there sought by a bill in equity to enforce the constitution and statute of the State of Michigan making stockholders liable for labor performed for a corporation by an action in assumpsit, and it appeared to the Wisconsin court that the corporation must be a party to the suit. The necessity of the corporation being a party and an account being taken and its affairs being wound up in order to do complete justice was the basis of the decision in *Young* v. *Farwell,* 139 Ill. 326. In that case a bill was filed against two stockholders of a Michigan corporation residing in this State, to enforce payment of the amount of a judgment. The bill was dismissed as to one and relief granted as to the other, and it appeared that it was necessary to take an account of the indebtedness and wind up the affairs of the corporation and apportion the indebtedness among the solvent delinquent stockholders, and for that purpose to determine liabilities under the laws of Michigan, so that no decree entered in this State could do complete justice to those liable to be affected by it and might do injustice to some. What was said in that case about a want of sufficient comprehension of the laws of Michigan and the possibility of the Supreme Court of that State reaching a different conclusion from this court is not applicable to this case, where the bill avers both the laws of Missouri and an express promise to pay the balance to the corporation. In *Tuttle* v. *National Bank of Republic,* 161 Ill. 497, it was held that the liability of stockholders under the constitution of Kansas and the special remedy given by the statute of that State must be applied within that jurisdiction, but afterward, in *Bell* v. *Farwell,* 176 Ill. 489, the holding that a special remedy provided by the statutes of another State, not opposed to the legislation or

public policy of this State nor calling for forms of action unknown to our law, could not be enforced here, was distinctly disapproved. It was also there held that where the laws of Kansas were pleaded the stockholder's liability would be enforced in this State, and under that decision the possibility suggested in *Young* v. *Farwell* that the Supreme Court of Michigan might reach a different conclusion from this court ceases to have any weight. In *Young* v. *Farwell* the court cited and relied upon the decision of the Massachusetts court in *New Haven Horse Nail Co.* v. *Linden Spring Co. supra,* but that court afterwards, in *Hancock Nat. Bank* v. *Ellis,* 166 Mass. 414, held that a declaration alleging that according to the law of Kansas a stockholder in a corporation is liable to a judgment creditor as upon a contract is a good declaration, and that requirement is satisfied by the bill in this case. In *Whitman* v. *Oxford Nat. Bank,* 176 U. S. 559, which was a suit to enforce the liability of a stockholder, it was held that the action not being to enforce a penal statute of Kansas but only to secure a private remedy, could be maintained in any court of competent jurisdiction.

There is no reason in this case for declining to take jurisdiction on the ground that the laws of the State of Missouri are unknown. The laws of other States are pleaded in the courts of this State as facts, and our courts constantly take jurisdiction of cases where laws must be, and are, proved as facts. Our courts are perfectly competent to determine what the laws of other States are as matters of fact, and there is no reason for sending an applicant for the redress of wrong to another State to have a fact determined which is pleaded and may be proved in our courts. Counsel are in error in contending that the allegation concerning the laws of Missouri is a mere conclusion of law, not admitted by the demurrer. The averment is an averment of fact, which may be pleaded, admitted or denied like any other fact. It is suggested that the allegation as

to the laws of Missouri is not sufficient in form, but we see no objection to it. Furthermore, the liability for the unpaid balance need not rest upon any allegation as to the laws of Missouri, since the bill alleges a specific promise to pay to the corporation the unpaid balance on the stock. The objection that this promise might have been made to the persons from whom the stock was purchased has no force, for the reason that it makes no difference whether the promise was made directly to the corporation or to the assignor of the stock for its benefit.

It was not necessary that there should be any call made by the corporation or the bankruptcy court. The creditor of a corporation can proceed in equity without a call and without taking any account of other indebtedness or making all stockholders defendant. The liability of a stockholder for unpaid subscriptions is several and not joint, and the creditor is not bound to settle up the affairs of the corporation in order to obtain his dues. (*Hatch* v. *Dana,* 101 U. S. 205.) A creditor of a corporation seeking satisfaction of his debt need look no further than to find a solvent stockholder who is liable for it, and he sustains no relation to the corporation which requires him to adjust equities between stockholders or between the corporation and others. *Ogilvie* v. *Knox Ins. Co.* 22 How. 380.

It was suggested in *Hatch* v. *Dana, supra,* that a stockholder, when sued, could, if he desired, file a cross-bill and bring in other stockholders and enforce contribution, and upon that suggestion counsel found an argument that this suit ought to have been brought in Missouri, so that the defendants could bring in other stockholders. Inasmuch as the Missouri court would have no jurisdiction of the defendants and they could not be brought into that court, there would be no occasion for their filing any cross-bill to bring in someone else, and, of course, it would be desirable for them to have the suit in a court that could render no decree against them. But wherever the suit might be

brought, it would be of no avail to the defendants to bring in the other three stockholders who are insolvent and from whom nothing could be recovered in the way of contribution.

Much is said about this suit relating to the internal affairs of a Missouri corporation, and that because it relates to internal affairs the courts of this State have no jurisdiction to set aside the fraudulent scheme by which the balance of the unpaid subscriptions was nominally satisfied. The term "internal affairs" has no very definite or fixed ✗ meaning, but we do not think that it extends to cheating creditors, and it must be confined to relations affecting only the stockholders and the corporation among themselves. A contract of a corporation limiting the liability of its stockholders to a portion of the par value of their stock is void both as to creditors and the assignee in bankruptcy, (*Upton* v. *Tribilcock,* 99 U. S. 45,) and the scheme in this case is admitted by the demurrer to have been a fraud. The relation of a stockholder who has not paid for his stock, to the corporation, is the ordinary one of debtor. (*Parmelee* v. *Price,* 208 Ill. 544.) If it was necessary that the corporation should be represented in the litigation, it was present in this case by the trustee in bankruptcy, who by the law represents and stands in the place of the corporation. The bankrupt corporation was in legal contemplation a party and all the stockholders except those who are insolvent were defendants. The stockholders except the defendants were not necessary parties by reason of their insolvency, and as the trustee represents both the creditors and the corporation, (Brandenburg on Bankruptcy, 737; Collier on Bankruptcy, 389;) all the parties whose presence could in any manner affect the litigation were subject to the jurisdiction of the court. There was no lack of jurisdiction in the court to hear and determine the case nor any reason for declining to assume jurisdiction. The courts of Missouri could not obtain jurisdiction of the defendants

and the courts of this State alone could grant relief. The controversy was between creditors through their representative, the trustee in bankruptcy, and the defendants, and the court could apply an effective remedy, which it did.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

FARMER, C. J., and VICKERS and COOKE, JJ., dissenting: