SIOUX FALLS TAXPAYERS ASSOCIATION, Respondent,
v. CITY OF SIOUX FALLS, et al, Defendants and
Respondents and DAVIS, Intervener-Defendant, Appellant

(7 N. W.2d 136.)

(File No. 8494.   Opinion filed December 17, 1942.)

Rehearing Denied January 19, 1943.

**Hugh S. Gamble,** of Sioux Falls, for Appellant.

**Roy E. Willy** and **Sioux K. Grigsby,** both of Sioux Falls, for Plaintiff and Respondent and Intervener-Plaintiff and Respondent.

WARREN, J. An action was brought by the plaintiff to enjoin the city of Sioux Falls from paying W. T. Davis Construction Company a balance which it claimed to be due and owing it from the city of Sioux Falls upon a contract for doing certain work on the water tanks and standpipes, a part of the city water system. Sioux K. Grigsby made application to intervene and the court upon a showing permitted the intervention. It developed later that said Grigsby sought to recover for the city of Sioux Falls, certain payments made to the said Davis, charging that the payments were illegal and that the said payments were outside of the original contract for cleaning and painting certain water tanks and standpipes which had been entered into between the city of Sioux Falls and Intervener-Defendant W. T. Davis Construction Company on the 26th of July, 1939.

The contract provided that all foreign substances, including paint, should be removed by what is known as sandblasting operations. After the execution of the contract, Davis began work on the Menlo Avenue tank. Shortly after the work was started, the sandblasting operation uncovered certain deteriorations of the rivets and metal body of the tanks due to chemical reaction of the water upon the steel plates and rivets to such an extent that in a number of places of the bottom and the sides of the tank and riser were perforated with small holes.

A Mr. Nelson, the Water Commissioner, consulted with Mr. Reese, the Water Superintendent, about the condition of the tank and an inspection of the tank and riser was made. Commissioner Nelson and Mr. Reese believed that immediate action and repairs should be made. They consulted with Davis as to the cost of such repairs. Mr. Davis believed it was impossible to give any estimate of the entire cost of repairing; that the defect could not be determined until after the sandblasting had been completed. He quoted several figures as to prices charged by men engaged in that type of work. After this conversation with Commissioner Nelson and Water Superintendent Reese; Davis proceeded to do the repair work under an arrangement entered into

with said Nelson and Davis, in which the Intervener-Defendant was to be paid at a certain rate per hour per man and also to be paid per hour for air compressors and attachments, per hour for electric welders. The city was to furnish all necessary materials. The work was begun on the Menlo Avenue tank and after its completion, the other tanks and standpipes named in the written contract were repaired and completed. The condition of the second and third tanks and standpipes were found in even worse condition than had existed on the Menlo tank.

The plaintiff and intervener Grigsby claim that all of the repairs were made without the express authority of the city of Sioux Falls; that the defendant Nelson, without discussing the matters of repairs with any of the members of the Commission or calling on the City Engineer for his opinion, permitted Davis to do the repair work without any authority or approval from the City Commission. It would seem from time to time over a period of some four months, weekly bills were submitted to Nelson, approved by him and referred to the City Auditor for checking and then presented to and approved by the City Commission. It further appears that the original contract price was for only $3,415, while the total claims submitted amounted to $26,653.62. At the time of the issuance of the restraining order, there were claims pending before the City Commission in the sum of $3,782.92. No useful purpose would be served to detail the claims in this opinion. The trial court made a finding allowing the original contract price in the sum of $3,415. The trial court further found that the additional work for which the contractor claimed additional compensation amounted to more and in excess of the statutory limitation of $500; that no bids were asked for and that no contract had been let for such extra work to the lowest bidder; that no estimate of the cost thereof had been prepared by the City Engineer and that the City Engineer had not been consulted in connection with said work. The court further found that Nelson, as Water Commissioner, entered into the oral agreement with intervener Davis, whereby Nelson undertook, as City Com-

missioner, to obligate the defendant to pay said intervener for such extra work at a certain price for labor and machinery used. The court further found that certain additional work had been performed by intervener Davis and that a sum of $8,678.85 was the total amount to be recovered. The court also found that intervener Davis had been paid for 13 of the 14 separate estimates totaling $22,889.15 and that the total actual value of the services rendered by the intervener was $12,812.25 and that, therefore, said intervener had been overpaid by the city in the sum of $10,076.70. A judgment was entered against intervener Davis for that amount. He has appealed to this Court.

Appellant has grouped his argument and claims that the issues present four questions of law. In answering the first contention that the complaint of the plaintiff fails to state a cause of action as it is not a citizen and taxpayer residing within the municipality as required by SDC 45.0112, we hold that there was a proper party plaintiff in the Sioux Falls Taxpayers Association, a Corporation.

There seems to be sufficient authority to hold that the Sioux Falls Taxpayers Association, a Corporation, was a citizen and a taxpayer and under the statute could bring and maintain this action or proceeding for the purpose of restraining violation of any provision of the statute relating to municipal corporations. Haines v. Rapid City, 59 S. D. 58, 238 N. W. 145, and Dale v. School District, 66 S. D. 346, 283 N. W. 158.

The findings of fact seem to be based upon sufficient evidence to sustain the allegations in paragraphs 1, 2, 3, 4 and 5 of the complaint which, in substance, recites the organization, purpose and existence of the plaintiff corporation; that the action is brought as a taxpayer of the city of Sioux Falls and brings the action on its own behalf and on the behalf of all its members, consisting of taxpayers owning real and personal property, and pays taxes annually to the city, county and state.

The defendants, the City of Sioux Falls, John T. McKee, Bert T. Yeager, Commissioners, and Joseph S. Nelson as

Mayor, served their answer admitting allegations 1, 2, 3, 4 and 5 of plaintiff's complaint. The allegations in the complaint seem sufficient and broad enough so that we must hold that the defendants conceded by the admission in their answer the corporate existence, the residence and that the plaintiff was a taxpayer.

The citizenship of the corporation is challenged upon the theory that the statute uses the words, "citizen and taxpayer", does not mean and does not include a corporation as a citizen and, therefore, this action is not brought by a proper party plaintiff and that even though Grigsby was permitted to intervene as a citizen and taxpayer, that could not give life to the dead proceeding before the court; that the intervener Grigsby could not take over the action and cure the defect in the proceedings and give life thereto as the proceedings, without having been brought by the proper party plaintiff, had no standing in court.

Much has been written upon the subject of citizenship of a corporation. We do not deem it necessary to deal with the citizenship of the plaintiff at length except to interpret, SDC 45.0112, "Citizen and taxpayer may bring action. Any citizen and taxpayer residing within a municipality may maintain an action or proceeding to prevent, by proper remedy, a violation of any provision of this title", which we believe confers the right of a citizen and taxpayer to bring an action such as the present one. It would seem obvious that the legislature must have intended that corporations should be included within the meaning of bringing an action or proceeding to prevent a violation of the various provisions within the title.

The authorities before us seem to indicate that courts have encountered considerable trouble in dealing with the question of residence and citizenship of a corporation. In a late, well-considered case of Jackson Securities & Inv. Co. v. State, 241 Ala. 288, 2 So.2d 760, 764, the Supreme Court of Alabama has covered the field quite thoroughly and we quote a portion thereof which we believe is of great weight

in deciding the citizenship of the plaintiff in this action and we quote:

"The general rule is recognized everywhere that a corporation is a citizen, resident or inhabitant of the state under whose laws it was created, and nonresident of every other state, though it does business in such other state by its permission under its laws so providing. Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376; 20 Corpus Juris Secundum, Corporations, p. 17, § 1794; 23 Amer. Jur. 46, § 35; 13 Amer. Jur. 280, § 147; Seaboard Rice Milling Co. v. Chicago, R. I. & P. R. Co., 270 U. S. 363, 46 S. Ct. 247, 70 L. Ed. 633."

In pursuing the interpretation of the statute to gather the true intention of the legislature, we must gather the meaning from the Section's connection with the various provisions within the Chapter. When that is done, we do not hesitate to say that a citizen for the purpose of this Act includes every legal entity, possessing a legal residence within and paying taxes toward the support of the political subdivision. This, we believe, expresses the true intention of the legislature. Any other interpretation would fail to give full expression to the intent of the legislature. Bartron v. Codington County, 68 S. D. 309, 2 N. W.2d 337, 140 A. L. R. 550. See, also, 8 Fletcher's Cyclopedia Corporation § 4025, pp. 439-443.

The complaint, when measured by the liberal rules of pleading, seems sufficient and we overrule the defendant's objection that no action was pending before the court in which the court could allow an intervention to be made. This, upon the theory that there were issues to be tried upon the complaint and answer, much, of course, happened thereafter in this, that certain parties were permitted to intervene, other pleadings and issues were injected into the pending suit. We do not believe that it is necessary to the decision of this case to follow out and determine all of the procedural steps and motions presented to the Court. Enough to say there was a proper party plaintiff and a legal cause of action stated in the pleadings and that the court

was, therefore, empowered to permit Grigsby to intervene and to hear the issues framed under the pleadings of the original parties and the interveners concerning the controversies which the parties desired to adjudicate.

The pleadings seem to reflect fairly the issues to be adjudicated and without further statement as to the cause of action on intervener Grigsby's counterclaim, we hold that the court did not err in permitting the counterclaim to be filed and testimony to be introduced in support thereof.

The appellant insists that the contract entered into by Nelson and appellant was ratified by the defendant and, therefore, a legal contract. This is challenged by the plaintiff and intervener Grigsby. They cite chapter 189 of the 1939 S. D. Session Laws. The above statute amended SDC 45.1501 and 45.1508. These statutes relate solely to the contracts by municipalities for local improvements. It is required that all contracts for the construction or repair of all public buildings or for public works shall be let to the lowest responsible bidder. Under chapter 189, the governing body may direct any local improvements, except local improvements for which special assessments are to be levied, to be put down by day's work, if the reasonable cost is not in excess of $500. Certain estimates of cost and various other requirements, which are to be prepared by the City Engineer and must be filed for public inspection, are not essential at this point.

We turn now to chapter 300 of 1939 S. D. Session Laws p. 376 ·cited by intervener. The subdivisions of Section 1 define terms relating to awarding of contracts by public corporations. Section 2 provides how contracts may be let. It reads and we quote the portion involved herein: "Section 2. Contracts of public corporations; when public bids required. All contracts of any public corporation, whether for the construction of public improvements or contracts for the purchase of materials, supplies or equipment, when such contracts involve an expenditure equal to or in excess of Five Hundred Dollars ($500.00) must be let to the lowest responsible bidder. * * *"

The foregoing statutes were in full force and effect when intervener Davis attempted to enter into a contract with the city of Sioux Falls through Commissioner Nelson. There was an utter disregard of the statutes in this that the parties failed to observe the mandates requiring the letting of the contract to the lowest responsible bidder. The contract relied upon by appellant must be considered unlawful and subject to section 10 and section 2 of chapter 300, supra. A portion of Section 10 reads as follows: "Section 10. Contract entered into in violation hereof unlawful. It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the terms of this act, and any such contract entered into shall be null and void and of no force and effect. * * *"

The appellant would have us believe that an emergency existed, which would permit the repairs and improvements to be paid out of the general fund. We do not believe that the evidence discloses emergent conditions. The trial court did not gather from the evidence that an emergency existed. We have read the record and are satisfied that the court did not err in holding that an emergency did not exist so as to permit the disregarding of the statutes which require certain things to be done and that the contract be let to the lowest bidder. We do not deem it necessary to review the evidence in this opinion, but merely state that there is sufficient evidence to sustain the trial court.

Having reached the conclusion that no legal contract was entered into between the parties, we now proceed to consider the intervener's counterclaim for the recovery back of the various claims which had been paid to the intervener Davis.

At the outset we do not find any proof offered or claims made showing that the City Commission approved or ratified the oral contract between the appellant and defendant Nelson. This Court is committed to the rules of law announced in Dale v. School District, 66 S. D. 346, 283 N. W. 158; and the cases therein cited. In it, we reached the conclusion that a taxpayer under proper circumstances may maintain

an action on behalf of himself and other taxpayers to recover into the public treasury funds wrongfully expended or misapplied. See Campbell County v. Overby, 20 S. D. 640, 108 N. W. 247; Norbeck & Nicholson Co. v. State of South Dakota, 32 S. D. 189, 142 N. W. 847, Ann. Cas. 1916A, 229; Sioux Falls Paint & Glass Co. v. Knudtson, County Auditor, 66 S. D. 261, 281 N. W. 201; Haines v. Rapid City, 59 S. D. 58, 238 N. W. 145; Jacobson v. Ruden et al., 60 S. D. 285, 244 N. W. 363; Bartron v. Codington County, 68 S. D. 309, 2 N. W.2d 337, 140 A. L. R. 550; Miller v. McKinnon et al., 20 Cal.2d 83, 124 P.2d 34, 140 A. L. R. 570, and note at page 583; and Ritchie v. City of Topeka, 91 Kan. 615, 138 P. 618. It would seem that the intervener, W. T. Davis Construction Company, cannot retain the money which it obtained from the City by an unlawful contract. The city of Sioux Falls under the law must be permitted to recover back the money paid out to the intervener. To permit the recovery such as this is supported by the great weight of authority. It applies to this case because the transaction in question is against the public policy and in violation of law. The unlawful contract and the action of some of the officers in entering into the contract were repudiated and this action brought to recover back the money paid over without the authority of law from the treasury. It will be observed that in Bartron v. Codington County, supra, the majority opinion recognized the difference of factual situations by making the following distinction [68 S. D. 309, 2 N. W.2d 348, 140 A. L. R. 550]:

"Chapter 65, Session Laws of 1891. In Norbeck & Nicholson Co. v. State, supra, recovery on the quantum meruit was denied a contractor for services performed under an express contract made in contravention of prohibitions contained in the Constitution for the reason that to have permitted recovery would have nullified such constitutional provisions. Such a policy, designed to protect the special interest of the county and its taxpayers, is not involved in the case at the bar. * * *" Miller v. McKinnon et al., 20 Cal.2d 83, 124 P.2d 34, 140 A. L.R. 570, and note at page 583.

The City Commission being without authority to make the contract in the first instance could not legally ratify the work which was done thereunder. The statutes which prohibit entering into such contractual relations without observing the methods and manner and being unlawful by Section 10, which provides that any such contract entered into shall be null and void and of no force and effect, does not permit the City Commission to legally ratify the work which was done under said oral contract. We do not consider that the question urged by appellant charging the court with error because it saw fit to approve an allowance to the appellant for the value of the services rendered and materials furnished by appellant on a quantum meruit basis, to merit consideration except to say that the contention by the appellant that the court's finding should have been for the entire amount claimed for the labor and extras by the appellant or that no judgment against the appellant should have been rendered is not within the issues. This is not questioned by the city or intervener Grigsby and we do not see just how this appellant can complain of the court being charitable and allowing the appellant to retain what it thought a reasonable value of the materials furnished, and work and labor performed.

This contention merits no further consideration. The judgment appealed from is affirmed.

RUDOLPH, P.J., and POLLEY, ROBERTS, and SMITH, JJ., concur in the result.