2004 SD 91

**Peggy BURHENN, Individually and as Special Administrator of the Estate of Timothy F. Burhenn, Plaintiffs and Appellants,**

v.

**DENNIS SUPPLY COMPANY, Defendant and Appellee.**

No. 22737.

Supreme Court of South Dakota.

Argued April 27, 2004.

Decided Aug. 4, 2004.

Mark V. Meierhenry, Robin J. Houwman of Danforth, Meierhenry & Meierhenry, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellants.

Melissa B. Nicholson, Thomas J. Nicholson of Johnson, Eklund, Nicholson & Peterson, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Peggy Burhenn, as representative for the Estate of Timothy F. Burhenn (Burhenn), brought a wrongful death action against Dennis Supply Company (Dennis Supply). The complaint alleged Dennis Supply acted negligently when it took several of its customers on a fishing trip, resulting in the drowning death of Burhenn. Dennis Supply denied any negligence on its part and asserted the affirmative defenses of contributory negligence and assumption of the risk. After a four-day trial, a jury found Dennis Supply negligent but denied recovery based on its finding that Dennis Supply's negligence was not the proximate cause of Berhenn's death. Burhenn now appeals raising several issues for our review. Affirmed.

## FACTS AND PROCEDURE

[¶ 2.] Dennis Supply is a wholesale heating and air conditioning business headquartered in Sioux City, Iowa. In addition to its business in Iowa, Dennis Supply operates stores in Nebraska and South Dakota. Burhenn co-owned and operated a heating and air conditioning supply business in Sioux Falls, South Dakota, that had done business with Dennis Supply for a number of years. As part of its business, Dennis Supply annually invited some of its customers on a fishing trip it financed to The Lake of the Woods in Ontario, Canada.

[¶ 3.] In September of 1999, William Sinkbeil (Sinkbeil), manager of the Sioux City Dennis Supply, informed Tom DeGroot (DeGroot), a Dennis Supply employee in Sioux Falls, he was scheduled for the annual fishing excursion to Canada and that he should invite a customer. DeGroot invited Burhenn, and Burhenn accepted the invitation. Dennis Supply furnished all the necessary provisions for the trip and provided transportation to Canada by way of its company vehicles. Sinkbeil organized the trip.

[¶ 4.] On September 10, 1999, customers from Iowa and Nebraska met in Sioux City, Iowa and headed north in a vehicle provided by Dennis Supply. The group stopped in Sioux Falls, South Dakota in order to pick up Burhenn and DeGroot. After picking up Burhenn and DeGroot, the group continued on to Fargo, North Dakota where they stayed the night. They departed from Fargo early the next morning and arrived at The Lake of the Woods on September 11, 1999.

[¶ 5.] The next morning, Dennis Supply arranged for a local fishing guide to lead a group comprised of three boats—two supplied by Dennis Supply and one furnished by the guide. DeGroot, Sinkbeil and the fishing guide each operated a sixteen-foot aluminum boat. The boats were equipped with the proper Ontario safety equipment, including six floating seat cushions, life jackets, a whistle and other safety devices. Despite the presence of the life jackets, testimony established that none of the group members actually wore the life jackets while fishing. Neither of Dennis Supply's employees had official training in operating these boats.

[¶ 6.] That morning, the professional guide led the group to various places around the lake. The morning was cool, and it rained throughout the day. The guide operated his boat at three quarters

throttle and utilized his lanyard when he moved from place to place. After an uneventful morning of fishing, the party returned to the houseboat where they were staying for lunch.

[¶ 7.] Sometime in the late afternoon of September 12, 1999, DeGroot and Burhenn went back out on the lake to fish. They used a twenty-five horse power boat owned by Dennis Supply. DeGroot operated and steered the boat by a tiller attached to the engine, but he did not use the lanyard designed to kill power to the boat if he fell overboard. After fishing for a while, the men decided to move the boat to a different area in an attempt to catch their daily limit. DeGroot was seated on the rear seat of the boat with his legs straddling the seat, and his chest faced east. Seated in the front of the boat, Burhenn faced west. DeGroot operated the boat at full throttle, while steering with his left hand and looking over his shoulder to the south. Neither man wore a life jacket. Shortly thereafter, DeGroot and Burhenn were pitched from the boat. After both men were thrown from the boat, they began swimming toward the shore. It appears that Burhenn tossed DeGroot a floating seat cushion, and DeGroot was able to reach the shore. Burhenn, however, drowned after making it two-thirds of the way.

[¶ 8.] At trial, the parties offered different explanations as to the cause of the accident. DeGroot testified that he looked down for a second, and when he looked back up he saw Burhenn in a crouched position, not quite standing. According to DeGroot, the boat began to roll after Burhenn assumed this position. He further testified that he attempted to shift his weight to level out the boat but to no avail. Both men were thrown from the boat, which continued to circle in the water at full throttle.

[¶ 9.] Although Peggy Burhenn offered no exact explanation of what caused both men to be thrown out of the boat, she denied that her husband had done anything to cause the accident. She argued DeGroot's negligent operation of the boat and failure to use the lanyard caused the accident. She also claimed Dennis Supply was liable for the accident because it failed to properly train its employees in the operation of the boats.

[¶ 10.] After a four day trial, a jury found that Dennis Supply was negligent, but denied any recovery because it believed Dennis Supply's negligence had not been the proximate cause of Burhenn's death. Burhenn now appeals and raises the following issues for our review:

1. Whether the trial court's jury instructions on the relative duties of the Plaintiff and Defendant were in error.

2. Whether the trial court erred when it allowed Dennis Supply to amend its answer the day before trial to plead the affirmative defense of assumption of the risk.

3. Whether the trial court's decision to apply South Dakota law to Burhenn's claim was in error.

4. Whether the trial court committed reversible error by not transcribing the opening statement and in permitting Dennis Supply to argue last.

5. Whether the Legislature's 1998 amendment to SDCL 20–9–2 requires this Court to establish a new method to compare negligence of plaintiffs and defendants in South Dakota.

6. Whether implied assumption of the risk should be abolished as subsumed under comparative negligence in South Dakota.

7. Whether the trial court erred when it instructed the jury on assumption of the risk.

8. Whether South Dakota should continue to apply an objective standard under implied assumption of the risk.

Affirmed.

## STANDARD OF REVIEW

[¶ 11.] The relative standards of review applicable to Burhenn's various claims are straightforward. Conclusions of law, such as a trial court's choice of law determination and statutory construction, are reviewed de novo. *Great West Cas. Co. v. Hovaldt,* 1999 SD 150, ¶ 6, 603 N.W.2d 198, 200; *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611. We review jury instructions as a whole, and error is not reversible unless prejudicial. *Buxcel v. First Fidelity Bank,* 1999 SD 126, ¶ 13, 601 N.W.2d 593, 596. "The burden of demonstrating prejudice in failure to give a proposed instruction is on the party contending error." *Id.* The standard of review on a motion granting an amendment of a pleading is clear abuse of discretion resulting in prejudice to the non-moving party. *Isakson v. Parris,* 526 N.W.2d 733, 736 (S.D.1995).

## ANALYSIS AND DECISION

[¶ 12.] **1. Whether the trial court's jury instructions on the relative duties of the Plaintiff and Defendant were in error.**

[¶ 13.] Burhenn argues the trial court improperly instructed the jury on the relative duties of the parties. First, Burhenn points out that the trial court instructed the jury on Dennis Supply's burden of proving contributory negligence and assumption of the risk in Instruction 23, but it did not define contributory negligence or assumption of the risk until Instructions 32 and 34, respectively. Burhenn believes this constitutes reversible error. We disagree.

[¶ 14.] On appeal, this Court has consistently stated that jury instructions must be read as a whole. *Buxcel,* 1999 SD 126, ¶ 13, 601 N.W.2d at 596. When the trial courts jury instructions are read as a whole the law is correctly stated. Simply because Burhenn wanted the instructions read in a different order or submitted a different instruction relaying the same information does not mean that the trial court committed reversible error.

[¶ 15.] Burhenn next argues that the trial courts refusal to give an instruction on the duty of a boat passenger created reversible error. This argument is also misplaced. Trial courts possess broad discretion in instructing the jury. *See Artz v. Meyers,* 1999 SD 156, ¶ 8, 603 N.W.2d 532, 534 (citations omitted). Here, the trial court gave an instruction on the standard of care generally applicable in a negligence action, and was not required to go further. *See* SDCL 20–9–1 (general negligence statute). Burhenn is unable to cite any authority requiring South Dakota courts to specifically submit an instruction to the jury on the duty of a boat passenger as proposed by Burhenn. As the trial court did not refuse to give an instruction that properly set forth the law of this state, it did not create reversible error. *Buxcel,* 1999 SD 126, ¶ 13, 601 N.W.2d at 596.

[¶ 16.] Finally, Burhenn believes that the trial courts failure to give a requested instruction on the duty of Dennis Supply being the same as a professional fishing or hunting guide constituted prejudicial error. In this context, prejudicial error means "the jury might and probably would have returned a different verdict if

[the] instruction had been given." *Fritzmeier v. Krause Gentle Corp.*, 2003 SD 112, ¶ 11, 669 N.W.2d 699, 703. In this case, the trial court gave an instruction informing the jury of a fishing guide's duty. This instruction was accurate, and Burhenn is unable to cite any authority requiring the trial court to have given a more detailed instruction. We note, however, that even had Burhenn been able to establish that the trial courts failure to accept her proposed instructions constituted error; she would be unable to show prejudice. The jury found that Dennis Supply violated a duty it owed to Burhenn. Thus, her instructions requiring a higher duty of care by Dennis Supply would not have advanced her case.

[¶ 17.] Burhenn is unable to establish prejudice, and her claims under this issue must therefore fail. *See Buxcel*, 1999 SD 126, ¶ 13, 601 N.W.2d at 596.

[¶ 18.] 2. **Whether the trial court erred when it allowed Dennis Supply to amend its answer the day before trial to plead the affirmative defense of assumption of the risk.**

[¶ 19.] For her second point of error, Burhenn argues that the trial court committed reversible error when it granted Dennis Supply's motion to amend its answer to include the affirmative defense of assumption of the risk. Dennis Supply filed the motion on January 9, 2003, but a hearing on the motion was not held until January 27, 2003, one day before the start of the trial. Burhenn points out that Dennis Supply made great use of the assumption of the risk theory in its final argument.

[¶ 20.] The standard of review on a motion granting an amendment of a pleading is clear abuse of discretion resulting in prejudice to the non-moving party. *Isakson*, 526 N.W.2d at 736. "[A] party

may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." SDCL 15–6–15(a). "A trial court may permit the amendment of pleadings before, during, and after trial without the adverse party's consent." *Dakota Cheese, Inc. v. Ford*, 1999 SD 147, ¶ 24, 603 N.W.2d 73, 78. (citation omitted) "[T]he most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmoving party will be prejudiced by the amendment." *Id.* (citation omitted).

[¶ 21.] We do not believe Burhenn is able to show any prejudice as a result of the trial court's granting of Dennis Supply's motion to amend. Here, Dennis Supply filed the motion to amend its answer twenty-two days before trial was scheduled to begin. That a hearing on the motion was scheduled only one day before trial was not under the control of Dennis Supply. Presumably, Burhenn was put on notice of the motion when it was filed twenty-two days before the trial, and it was within her discretion to choose how to proceed in light of the motion's scheduling date. Burhenn had the choice to do nothing until the motion was heard or to prepare for challenging the motion.

[¶ 22.] Moreover, that the granting of the motion did not actually prejudice Burhenn's case is evidenced by the fact that the jury never actually reached the issue of assumption of the risk. The jury returned a verdict finding Dennis Supply negligent. The jury further found, however, that Dennis Supply's negligence was not the proximate cause of Burhenn's injuries. Thus, Burhenn failed to establish her prima facie case against Dennis Supply, and it was not necessary for the jury to address the defendant's affirmative defenses. In fact, the verdict form given to

the jury specifically directed it not to consider the affirmative defenses after it found that Dennis Supply's negligence was not the legal cause of Burhenn's injuries. We also note that Dennis Supply did allege contributory negligence on the part of Burhenn in its answer, a fact which suggests Burhenn had notice Dennis Supply intended to raise an affirmative defense at trial closely related to assumption of the risk. As Burhenn is unable to show any prejudice under these facts, her arguments under this issue fail. *See Dakota Cheese,* 1999 SD 147, ¶ 26, 603 N.W.2d at 78–79.

[¶ 23.] **3. Whether the trial court's decision to apply South Dakota law to Burhenn's claim was in error.**

[¶ 24.] The trial court applied South Dakota law to Burhenn's claim. On appeal, Burhenn argues this choice was incorrect and submits that the court should have applied Iowa law. It is well-settled that South Dakota employs the most significant relationship test when determining choice of law questions. *Rothluebbers v. Obee,* 2003 SD 95, ¶¶ 20–21, 668 N.W.2d 313, 320–21; *Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 68 (S.D. 1992). Under the most significant relationship approach a court must consider:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. Restatement (Second) of Conflict of Laws § 145 (1971). The principles to be considered under § 6 are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second), *supra* § 6.

[¶ 25.] In determining that South Dakota's law applied, the trial court correctly considered the most significant relationship test. It found that the place where the injury occurred was Canada; the conduct causing the injury occurred in Canada; both parties resided in South Dakota, with Dennis Supply headquartered in Iowa; and that the relationship between the parties was centered in Sioux Falls, South Dakota. The court further stated

that, all things being equal, the ultimate tie breaker was the state's interest. Since this case involved a South Dakota resident and a corporation doing business in South Dakota, its interest was compelling. Therefore, the trial court determined that South Dakota law applied. In addition, after the parties presented evidence, the trial court commented that its decision to apply South Dakota was stronger having heard all of the facts in the case.

[¶ 26.] Burhenn correctly points out the trial court's finding Dennis Supply was a resident of South Dakota was in error. *See Sioux Falls Taxpayers Association v. City of Sioux Falls*, 69 S.D. 93, 7 N.W.2d 136, 139 (1942) (a corporation is a resident of the state in which it was incorporated). Although the trial court may have erred in stating that Dennis Supply was a resident of South Dakota, its analysis of the most significant relationship test and its decision to apply the laws of South Dakota remains valid.

[¶ 27.] We believe the facts show that the center of the relationship between Burhenn and Dennis Supply was Sioux Falls, South Dakota. Burhenn conducted business with Dennis Supply exclusively through its Sioux Falls store. There was no evidence to show that Burhenn had contact with Dennis Supply or any of its employees outside of South Dakota. Burhenn ordered supplies through Dennis Supply's Sioux Falls store, had a relationship with and was invited on this trip by a South Dakota employee, began his trip from South Dakota and planned to return from the trip to South Dakota. All of Burhenn's interactions with Dennis Supply took place in South Dakota; thus, the trial court correctly determined that the center of the relationship between the parties was in South Dakota.

[¶ 28.] We note that the two places that have the strongest interest in this action

were Ontario, Canada and South Dakota. Since the facts of this case demonstrate there was no Iowa connection to the suit, Iowa law would not be an appropriate choice of law to apply. As both parties agreed Ontario law should not have applied, the trial court's determination that South Dakota law would be applied was correct.

[¶ 29.] **4. Whether the trial court committed reversible error by not transcribing the opening statement and in permitting Dennis Supply to argue last.**

[¶ 30.] Burhenn argues the trial court committed reversible error by denying her request that the parties' opening statements be transcribed. SDCL 15–14–14 provides: "The court reporter need not make stenographic report of the opening statements of counsel unless the court shall direct, nor if made shall he include same in the transcript unless requested by the party ordering the transcript." SDCL 15–14–14 clearly states that if the court does not direct the court reporter to make a record of the attorneys' opening statements, they need not be taken down. This comports with the general rule that attorney's words are not evidence to be considered by the jury when determining the outcome of a case. Statutory law does not give any exception to SDCL 15–14–14 based upon a request of either party that the opening statements be recorded. Whether or not to record opening statements is a decision solely within the trial court's discretion, and Burhenn is unable to show an abuse of discretion under this issue.

[¶ 31.] Next, Burhenn maintains that the trial court committed reversible error when it permitted Dennis Supply to argue last. SDCL 15–14–1 outlines the general order of proceedings in civil jury trials. According to SDCL 15–14–1(8), "[a]fter

the court shall have charged the jury, the plaintiff or party having burden of proof may commence and may conclude the argument, the opposing party making his argument between the opening and concluding argument of plaintiff." The statute declares, however, that this general order is to be followed "*subject to the right of the court,* for good cause shown, otherwise to direct the order of statements, proof, and argument[.]" (emphasis added).

[¶ 32.] SDCL 15–14–1 clearly gives trial courts authority to change the order of closing arguments for good cause. It also states that the party bearing the burden of proof may commence and conclude the argument. Since Dennis Supply asserted the affirmative defenses of contributory negligence and assumption of the risk, it bore the burden of proving those two claims. In accordance with the statute, Dennis Supply was entitled to conclude the closing argument as it had the burden of proving Burhenn's negligence. In view of the fact that both parties carried some burden of proof, the trial court had good cause to change the order of closing arguments and deviate from the normal statutory procedure. We hold the trial court was in compliance with SDCL 15–14–1, and, therefore Burhenn is unable to show an abuse of discretion under this issue.

[¶ 33.] 5. **Whether the Legislature's 1998 amendment to SDCL 20–9–2 requires this Court to establish a new method to compare negligence of plaintiffs and defendants in South Dakota;**

[¶ 34.] 6. **Whether implied assumption of the risk should be abolished as subsumed under comparative negligence in South Dakota;**

[¶ 35.] 7. **Whether the trial court erred when it instructed the jury on assumption of the risk;**

And

[¶ 36.] 8. **Whether South Dakota should continue to apply an objective standard under implied assumption of the risk.**

[¶ 37.] Burhenn raises several challenges based upon Dennis Supply's affirmative defenses of assumption of the risk and contributory negligence. As noted earlier, however, the jury never reached these issues. The jury returned a verdict finding that Dennis Supply was negligent but that its negligence was not the legal cause of Burhenn's injuries. In reaching this verdict, the jury did not consider the defendant's affirmative defenses. Since the jury's verdict did not consider, let alone depend upon, any issues related to assumption of the risk or contributory negligence, they are now moot.*

[¶ 38.] Assumption of the risk allows a jury to relieve a party of liability even though it has found the party was negligent and the legal cause of another party's injuries. It allows the jury to do so if the party asserting the defense can prove that the injured party had actual or constructive knowledge of the risk, appreciated the risk, and "voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice." *Bell v. East River Electric Power Cooperative, Inc.,* 535 N.W.2d 750 (S.D. 1995). Similarly, the statutorily defined

* We wish to note, however, that despite Burhenn's argument to the contrary, there is proper, recent precedent that the affirmative defense of assumption of the risk is alive in South Dakota despite the 1998 amendment to SDCL 20–9–2. *See Buisker v. Thuringer,* 2002 SD 81, 648 N.W.2d 817; *Parker v. Casa Del Rey,* 2002 SD 29, 641 N.W.2d 112; *Rantapaa v. Black Hills Chair Lift, Co.,* 2001 SD 111, 633 N.W.2d 196.

affirmative defense of contributory negligence bars a plaintiff from recovery where its negligence was more than slight in comparison with the defendant's negligence. SDCL 20–9–2. The verdict form in this case specifically instructed the jury not to consider these affirmative defenses if it found Dennis Supply's negligence was not the proximate cause of Burhenn's injuries.

[¶ 39.] When the jury returned a verdict finding that Dennis Supply's negligence was not the legal cause of Burhenn's injuries, it did not consider Dennis Supply's affirmative defenses. As noted previously, the jury was explicitly instructed not to consider any affirmative defenses after it determined an absence of legal cause on the part of Dennis Supply. The fact that evidence was introduced in order to prove Burhenn's assumption of the risk or contributory negligence is irrelevant since the jury did not actually reach the point of taking it into account. Although Burhenn argues this evidence influenced the decision in this case, we must assume that the jury correctly followed and applied the law of the case. *See Bland v. Davison County*, 1997 SD 92, ¶ 15, 566 N.W.2d 452, 457. Thus, we hold all issues raised by Burhenn concerning Dennis Supply's affirmative defenses are moot and need not be addressed.

[¶ 40.] Affirmed.

[¶ 41.] SABERS, KONENKAMP, and ZINTER, Justices, and STEELE, Circuit Judge, concur.

[¶ 42.] STEELE, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.